**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KARIM BOSTAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-883 (RBW) |
| ) | |
| BARACK H. OBAMA, ) | |
| President of the United States, <u>et</u> <u>al.</u>, ) | |
| ) | |
| Respondents. ) | |
| ) | |
| TOFIQ AL BIHANI, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 05-2386 (RBW) |
| ) | |
| BARACK H. OBAMA, ) | |
| President of the United States, <u>et</u> <u>al.</u>, ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OPINION**

On June 12, 2009, the undersigned member of the Court amended the case management

order governing these proceedings with respect to those habeas corpus petitions filed by

detainees at the Guantanamo Bay Naval Base with habeas corpus petitions pending before this

member of the Court to establish a format for determining the admissibility of the evidence

relied upon by the government prior to any evidentiary hearing on the merits of the petitions.[1]

---

[1]  The Court initially ordered this amendment on June 4, 2009, but reconsidered and eventually vacated that order upon request from the government.

Specifically, the Court determined, over the government's objection,[2] that it would consider questions of admissibility regarding the government's evidence prior to holding any evidentiary hearings in the detainee cases pending before this member of the Court before the government could utilize such evidence to establish a prima facie case for military detention under the standard set forth by this member of the Court in <u>Gherebi v. Obama</u>, 609 F. Supp. 2d 43 (D.D.C. 2009) (Walton, J.).  The undersigned member of the Court therefore established a framework by which the government would identify which sources of evidence it intended to rely upon at any evidentiary hearing, the individual petitioners would file their objections to any such evidence cited, and the Court would resolve such objections before determining whether the government's case was strong enough to require rebuttal evidence from the individual petitioners.

Since amending the case management order in this manner, the Court has conducted hearings for two petitioners with active habeas corpus petitions to determine the admissibility of the government's evidence, and a third hearing is scheduled for August 25, 2009.  Having reflected at length upon the proper standard of review to govern the petitioners' evidentiary objections, the Court has arrived upon a general framework for deciding the merits of the petitioners' objections to hearsay proffered by the government.  Cognizant of the delays inherent in issuing memorandum opinions containing classified information for public consumption,[3] the Court will instead limit this memorandum opinion to the general legal issue of the standard of review that this member of the Court intends to apply to all of the hearsay objections filed by

---

[2]  In addition to the President, who is named as a respondent in his official capacity, the petitioner names various government officials as additional respondents in his habeas corpus petition.  A motion is currently pending before Judge Thomas F. Hogan of this Court to clarify whether the Secretary of Defense is the only proper respondent in this case.  Because Judge Hogan has not yet resolved that motion, and for ease of reference, the Court refers to the respondents collectively as the "government" for purposes of this memorandum opinion.

[3]  As a precaution, the Court submitted this memorandum opinion for a "walled off" classification review by the government prior to its issuance.  The memorandum opinion has been determined to be unclassified in its entirety.

petitioners with active habeas corpus petitions pending before this member of the Court and will resolve the specific objections raised by those petitioners who have already appeared before the Court in separate orders so that other petitioners who have not yet filed or argued objections to the admissibility of sources of evidence cited by the government are properly apprised of the Court's general approach in adjudicating these matters.

Ordinarily, a decision of this nature would not be necessary because, aside from the occasional admission of evidence through affidavits, the rules governing the admission of evidence in habeas corpus proceedings are indistinguishable from the rules governing civil and criminal cases. See Fed. R. Evid. 1101(e) (providing that the Federal Rules of Evidence apply in habeas corpus proceedings "to the extent that matters of evidence are not provided for in the statutes which govern procedure therein or in other rules prescribed by the Supreme Court pursuant to statutory authority"); see also 28 U.S.C. § 2246 ("On application for a writ of habeas corpus, evidence may be taken orally or by deposition or, in the discretion of the judge, by affidavit."). But see Herrera v. Collins, 506 U.S. 390, 417 (1993) (describing the process of admitting affidavits into evidence as "disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations").[4] However, in Hamdi v. Rumsfeld, 542 U.S. 507 (2004), the Supreme Court suggested that "[h]earsay . . . [might] need to be accepted as the most reliable evidence from the [g]overnment in [a habeas corpus proceeding concerning the military detention of an alleged member of an enemy armed force]," id. at 533–34 (plurality opinion).  Four years later, the Court echoed these sentiments in Boumediene v. Bush, ___ U.S. ____, 128 S. Ct. 2229 (2008), noting the government's "legitimate interest in protecting sources and methods of intelligence

---

[4]  Section 2246 further provides that "[i]f affidavits are admitted[,] any party shall have the right to propound written interrogatories to the affiants, or to file answering affidavits."

gathering," and expressing its expectation "that [this] Court will use its discretion to accommodate this interest to the greatest extent possible," id. at ___, 128 S. Ct. at 2276.

Faced with these ambiguous statements from the Supreme Court, Judge Hogan of this Court established a nuanced inquiry to determine whether hearsay proffered by the government should be introduced into evidence in his case management order. His order provides that individual judges "may admit and consider hearsay evidence that is material and relevant to the legality of the petitioner's detention if the movant establishes that the hearsay evidence is reliable and that the provision of non[-]hearsay evidence would unduly burden the movant or interfere with the government's efforts to protect national security." In re Guantanamo Bay Detainee Litig., Misc. No. 08-442 (TFH), 2008 WL 4858241, at * 3 (D.D.C. Nov. 6, 2008) (emphasis added).

Having carefully reviewed the Supreme Court's opinions in Hamdi and Boumediene, this member of the Court concurs with Judge Hogan as to how the government's legitimate national security interests and the petitioner's compelling interest in securing his freedom should be balanced. This balance is best achieved by permitting the government to introduce hearsay into evidence where the factors identified by Judge Hogan are satisfied. Further, the Court concludes, consistent with 28 U.S.C. § 2246, that the government may, if necessary, satisfy these conditions through the use of affidavits or declarations rather than through live witness testimony.

However, one aspect of Judge Hogan's standard—the language in his case management order indicating that the government need only show an "undu[e] burden" to justify the admission of reliable hearsay—requires further elaboration, especially in light of the position taken by the government in its memorandum of law in support of the admission of hearsay

evidence in these cases.  <u>See generally</u> Respondents' Motion and Memorandum to Admit Hearsay Evidence (the "Gov't's Mem.").  First, Judge Hogan's case management order not only requires a demonstrated "burden" to satisfy the order's requirements for the government's use of hearsay evidence, but also that the burden be "undu[e]."  <u>In re Guantanamo Bay Detainee Litig.</u>, 2008 WL 458241, at *3.  This is an important distinction.  Where the government is unable to produce non-hearsay evidence due to its own administrative or bureaucratic errors or lack of resources to amass such evidence, it cannot rely upon its shortage of resources or its own mistakes as justification for the use of hearsay.  And the more significant a fact the government seeks to establish through the use of hearsay is, the heavier its burden will be to justify the Court's consideration of hearsay as a substitute for its non-hearsay alternative.

Second, the undue burden prong of Judge Hogan's standard relates to the burden imposed on the government, <u>not</u> on its counsel.  While the Court is sympathetic to the considerable demands placed on the Department of Justice by the litigation in the numerous Guantánamo Bay detainee cases, the demands imposed upon the government's attorneys by requiring close adherence to the traditional rules of evidence does not warrant the jettisoning of those rules. Thus, it is no excuse for the government's lawyers to assert that there are too many habeas corpus petitions pending before the Court or too few resources allocated to the Department of Justice to compel fidelity to the centuries-old proscription against the use of hearsay where that hearsay does not meet any of the numerous exceptions to that prohibition already recognized in the Federal Rules of Evidence.  Just as "the costs of delay can no longer be borne by those who are held in custody," <u>Boumediene</u>, ___ U.S. at ___, 128 S. Ct. at 2275, so, too, the costs of this litigation, including the costs associated with providing sufficient manpower to properly litigate

these cases, must be borne by the government, not fobbed off on the petitioners in the form of a blanket presumption of admissibility of otherwise inadmissible hearsay.

Third, it bears repeating that the government must "establish[]" that the use of non-hearsay evidence would constitute an undue burden for the proffered hearsay to be admissible—mere allegations or representations to that effect will not suffice. Consequently, representations by the government's counsel or conclusory assertions from government officials that the use of a non-hearsay alternative to proffered hearsay evidence would be unduly burdensome will not satisfy the undue burden standard. Instead, the government will need to demonstrate why the use of non-hearsay alternatives would be unduly burdensome to the government, and it must do so through the use of statements made under oath by persons with personal knowledge of the matter about which their representations relate.

Fourth, and most important, the undue burden standard set forth in Judge Hogan's case management order does not mean, as the government seems to believe, that hearsay proffered by the government must be admitted into evidence because that is all the evidence that the government has available to it. See Gov't's Mem. at 6 ("There can be no doubt that refusing to consider hearsay would impose an undue burden and harm national security. Indeed, a contrary ruling would mean this habeas case cannot properly proceed[] because nearly all of the evidence is necessarily hearsay."). Contrary to the government's fulminations, this case, and all of the other active habeas corpus petitions pending before this member of the Court, will "properly proceed" whether the government's evidence is found to be admissible or not. Of course, the result of this process might not be to the government's liking, but that is no reason to totally abandon well-established, otherwise-applicable rules of evidence. The very notion that the Court should lower its standards of admissibility to whatever level the government is prepared (or even

able) to satisfy is contradictory to the fundamental principles of fairness that inform the Great Writ's existence.  See Boumediene, ___ U.S. at ___, 128 S. Ct. at 2247 (explaining that the purpose of the Constitution's Suspension Clause "ensures that, except during periods of formal suspension, the Judiciary will have a time-tested device, the writ [of habeas corpus], to maintain the delicate balance of governance that is itself the surest safeguard of liberty" (internal citation and quotation marks omitted)).

In reiterating and elaborating upon Judge Hogan's standard for the admission of hearsay evidence in habeas corpus proceedings filed by detainees at Guantánamo Bay, the Court necessarily rejects the broader reading of Hamdi and Boumediene advanced by the government in support of its position that all of its hearsay should be presumptively admissible.  See Gov't's Mem. at 6–8 (arguing this point).  As the Court has explained at each of the two hearings on the merits of a petitioner's evidentiary objections, Hamdi was decided in the context of a habeas corpus petition filed by a detainee apprehended by military allies on the battlefield in the middle of a war zone.  Hamdi, 542 U.S. at 510.  Not surprisingly, the plurality acknowledged that under those circumstances "the exigencies of the circumstances [might] demand that" proceedings to determine the legitimacy of such a detainee's military detention "be tailored to alleviate their uncommon potential to burden the Executive at a time of ongoing military conflict," id. at 533 (emphasis added), and invoked the admission of hearsay as an example of one such possible accommodation, id. at 533–34.  Nothing in this dicta from the plurality's opinion in Hamdi remotely suggests that hearsay should be routinely admitted into evidence regardless of the circumstances surrounding a detainee's detention, as the government advocates.

Boumediene is even less helpful on this issue.  While the government artfully extracts every conciliatory statement uttered in that opinion, see Gov't's Mem. at 7–8 (citing

<u>Boumediene</u>, ___ U.S. at ___, 128 S. Ct. at 2267, 2276), the reality is that the Supreme Court did not address the issue of hearsay at all in that case other than to criticize the effects of its unbridled use by the government in the Combatant Status Review Tribunal ("CSRT") proceedings previously employed by the executive branch. <u>See</u> <u>Boumediene</u>, ___ U.S. at ___, 128 S. Ct. at 2269 (noting that the absence of any "limits on the admission of hearsay evidence" in CSRTs rendered "the detainee's opportunity to question witnesses is likely to be more theoretical than real").  And while it opined in passing that habeas corpus proceedings have traditionally been "adaptable," <u>id.</u> at ___, 128 S. Ct. at 2267, and that "[c]ertain accommodations can be made to reduce the burden habeas corpus proceedings will place on the military," <u>id.</u> at ___, 128 S. Ct. at 2276, the Court gave no hint as to what form those "accommodations" should take, explaining that it could not "anticipate all of the evidentiary and access-to-counsel issues that will arise during the course of the detainees' habeas corpus proceedings," <u>id.</u>  In short, <u>Boumediene</u> suggests only that the Court be willing to adjust the normal rules of evidence to accommodate the unique military and national security interests inherent in detainee habeas corpus proceedings, which is precisely what the Court has done in the form of Judge Hogan's case management order.

The Court is equally unpersuaded by the government's argument that because Congress created a rebuttable presumption in favor of the government's evidence in the administrative proceedings created by the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, 119 Stat. 2680 (2005), the Court should do the same in the habeas corpus proceedings before it, <u>see</u> Gov't's Opp'n at 7–8 (arguing that such a rule would be "consistent with the clear statement of congressional policy" set forth in the DTA).  As the government knows, the Supreme Court held that this Court had jurisdiction over the habeas corpus petitions of Guantánamo Bay detainees in

large part <u>because</u> the procedures established under the DTA were "an inadequate substitute for habeas corpus." <u>Boumediene</u>, ___ U.S. at ___, 128 S. Ct. at 2274.  And even in DTA proceedings, the factfinder had an obligation to assess the reliability of the evidence presented. <u>See</u> <u>Parhat v. Gates</u>, 532 F.3d 834, 847 (D.C. Cir. 2008 ) ("If a [CSRT] cannot assess the reliability of the government's evidence, then the 'rebuttable' presumption becomes effectively irrebuttable.").  If anything, the DTA is a model of what to avoid in adjudicating the petitioners' cases.

The government also overstates the significance of Judge Robertson's ruling in <u>Khiali-Gul v. Obama</u>, Civil Action No. 05-877 (JR) (D.D.C. Apr. 22, 2009), by suggesting that he has in some way endorsed the presumption of admissibility advocated by the government.  <u>See</u> Gov't Mem. at 3 (describing <u>Khiali-Gul</u> as holding that "requiring the [g]overnment to justify the reliability of each document even before considering the evidence as a whole would ignore the Supreme Court's admonition to accommodate the [g]overnment's legitimate interests").  While Judge Robertson admitted hearsay into evidence in <u>Khiali-Gul</u>, he did so "with the assurance that the [p]etitioner's arguments [concerning the admissibility of the evidence] [would] be considered when assessing the weight of the admitted evidence." <u>Khiali-Gul</u>, slip order at 4.  In effect, he merely deferred considering the arguments against admissibility to the merits hearing on the habeas corpus petition before him, at which point those same arguments "will be considered." <u>Id.</u>

This member of the Court has chosen a different path to reach the same result.  Whether the assessment of a piece of hearsay's evidentiary worth is made at a preliminary hearing on the admissibility of proffered evidence or at the close of merits proceedings after being provisionally admitted into the record, the bottom line is that hearsay of no evidentiary worth will not be

considered when the Court makes its factual findings.  As for the relative merits of these two approaches, ultimately, that is a decision each member of this Court must make individually. This member of the Court notes only that it is the petitioners who have embraced the idea of preliminary evidentiary hearings, not the government, and that they have done so in full recognition of the occasional delays that may arise from bifurcating evidentiary determinations from the overall merits hearing.  If the petitioners are willing to prolong their proceedings so that they can cross-examine readily available government witnesses or obtain review from this Court of the circumstances compelling the government to redact information pertaining to the sources of its hearsay, this member of the Court sees no reason to deprive them of these opportunities for the sheer sake of expediency.[5]

Finally, the Court is far from convinced that it should defer questions of admissibility until all of the government's evidence has been considered on the theory that "the reliability of a particular piece of evidence will generally depend on how it fits within the evidence as a whole." Gov't's Mem. at 3.  This suggested approach is a direct inversion of what takes place in any other kind of adjudicative process, where factual findings are made on the basis of admissible

---

[5]  There are, of course, potential drawbacks for petitioners who challenge the admissibility of the government's evidence.  Addressing the deficiencies in the government's evidence upfront may in some circumstances actually inure to the government's benefit because it affords the government the opportunity to correct those deficiencies to the greatest extent possible before a decision on the ultimate merits of the petitioner's case is at hand.  But this "problem" only highlights the importance of the adversary process to the accuracy of the finding of facts made by the Court.  By allowing the petitioners to challenge the government's proffered evidence in this manner, the Court ensures that the best evidence available is actually presented to it, thereby reducing if not eliminating doubts and speculation on the part of the Court about the reliability of the evidence received into the record.

In a similar vein, one of the more bewildering assertions repeatedly made by the government is that the Court should refrain from creating "common law" rules of evidence to apply in these habeas corpus proceedings. Quite the contrary, it is the government that would have this Court abandon any pretense of fidelity to the rules of evidence that guide every other type of proceeding before it in favor of a nebulous factual inquiry based upon the cumulative impact of hearsay of unknown and often unknowable reliability without having made any showing that such a radical abandonment of the traditional rules of evidence is necessary.  This member of the Court finds such an approach imprudent.  This member of the Court will therefore observe the Federal Rules of Evidence except where national security or undue burden to the government requires otherwise, and the onus will be placed on the government to justify deviance from these rules rather than simply assume away any rules or requirements that the government deems inconvenient.  This is not making up a new standard for detainee cases—it is simply requiring the government to justify any variance from well-established rules of evidence.

evidence, not the other way around.  See Concrete Pipes & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622 (1993) (holding that, with respect to the "preponderance of the evidence" standard, "[b]efore any such burden can be satisfied in the first instance, the factfinder must evaluate the raw evidence, finding it to be sufficiently reliable and sufficiently probative to demonstrate the truth of the asserted proposition with the requisite degree of certainty").  Ultimately, attempting to determine the admissibility of evidence by comparing one piece of hearsay with no intrinsic guarantees of trustworthiness to other, similarly unreliable pieces of hearsay is a fruitless exercise: it establishes only that all of the hearsay is either accurate or inaccurate, but it does not establish that any of the hearsay actually is accurate.

Ultimately, the government seems to suggest that because so much of its hearsay evidence is (in its view) internally consistent, the contents of all of its proffered hearsay evidence must be true, rather in the same way that a rumor must be true if enough people repeat it.  But even the most widespread rumors are often inaccurate in part if not in whole.  How, then, is the Court to know which parts are correct and which are not?  It does not and will never know, which is why it cannot assess the reliability of hearsay on the basis of other unreliable hearsay that purportedly corroborates it.  See Parhat, 532 F.3d at 848 ("Lewis Carroll notwithstanding, the fact that the government has 'said it thrice' does not make an allegation true." (quoting Lewis Carroll, The Hunting of the Snark 3 (1876)).

For all of these reasons, the Court concludes that neither Hamdi nor Boumediene, nor the existing will of Congress compels the Court to adopt a blanket presumption that the hearsay proffered by the government in each of its cases before this member of the Court is admissible.  Nor is the Court willing to look at all of the government's hearsay in "context" before determining the admissibility of individual pieces of evidence.  The individual items of hearsay

proffered by the government will be assessed to determine whether they have sufficient indicia of reliability to justify their admission.  If they do, they will be admitted into evidence; if they do not, they will be excluded.

This is not to say that hearsay proffered by the government must have intrinsic indicia of reliability to be admitted into evidence, as corroborating evidence can be used to establish reliability if that corroborating evidence is itself reliable.   The Court's only point is that otherwise unreliable hearsay cannot be deemed reliable because there is other unreliable hearsay to the same effect.

The approach taken by this member of the Court comports with the standard set forth by Judge Hogan in his case management order (subject to the clarifications of that standard set forth above).  Consequently, both with respect to these particular habeas corpus petitions and for all of the active habeas corpus petitions pending before this member of the Court, the government must establish that any proffered hearsay evidence is admissible either (1) under the Federal Rules of Evidence, as modified by 28 U.S.C. § 2246, or (2) by demonstrating that (a) the proffered hearsay is reliable and (b) that the provision of non-hearsay evidence would unduly burden the government (as that term is construed in this opinion) or interfere with the government's ability to protect national security.

**SO ORDERED** this 19th day of August, 2009.[6]


REGGIE B. WALTON
United States District Judge

---

[6] This memorandum opinion relates to orders to be issued forthwith in <u>Bostan v. Obama</u>, Civil Action No. 05-883 (RBW) (D.D.C.), and <u>Al Bihani v. Obama</u>, Civil Action No. 05-2386 (RBW) (D.D.C.).